**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Papa and Debra Jo Papa, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>State of Arizona; the Arizona Court of Appeals, Division One; the Arizona Supreme Court; Ruth V. McGregor; John C. Gemmill; and the Arizona Commission on Judicial Conduct<br><br>    Defendants. | No. CIV 06-3060-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants' State of Arizona; Arizona Court of Appeals, Division One; Arizona Supreme Court; Ruth V. McGregor; John C. Gemmill and the Arizona Commission on Judicial Conduct (the "State Defendants") Motion to Dismiss (Dkt.#10) and Plaintiff George and Debra Jo Papas' ("Plaintiffs") Motion for Summary Judgment (Dkt.#13); Motion for Judgment to be in Form of Published Opinion (Dkt.#22-1), and Request to Expedite Judgment (Dkt.#22-2); and Motion for Entry of Default (Dkt.#23). After reviewing the papers, the Court issues the following Order.

**I.    Background**

On December 21, 2006, Plaintiffs filed the instant complaint against the State Defendants asserting that Plaintiffs were deprived of property without due process as well as that Plaintiffs' civil rights were violated pursuant to 42 U.S.C. §§ 1981 and 1983.

1  (Dkt.#1). Plaintiffs' allegations take issue with three prior state court judgments and the
2  Arizona appellate courts handling of Plaintiffs' appeals. For instance, Plaintiffs allege that
3  on June 16, 1987, the Arizona Court of Appeals, Division One, issued a Memorandum
4  decision in Papa v. Roberts, 1 CA-CV 8998 ("Roberts") that "was false because it did not
5  conform to the evidence, or the law, or the facts of the case." (Complaint, Dkt.#1, § XV).
6  Plaintiffs assert that the "civil case was for the recovery of a large real estate sales
7  commission and ... had been decided by mere Summary Judgment against Plaintiffs in
8  Apache County Superior Court." Id. § XVI. Plaintiffs allege that the Arizona Court of
9  Appeals erred in affirming the Superior Court's decision by "disregard[ing] the true law and
10 evidence that fully favored Plaintiffs. The Appeals Court also put forth false law and false
11 evidence into its Memorandum Decision that was contrary to the true facts of th[e] case."
12 Id. § XVII. Plaintiffs contend that as a result "Plaintiffs were injured with false judgment ..."
13 Id.

14      Plaintiffs further assert that they were injured by the Arizona Court of Appeals
15 handling of another civil case in which the Plaintiffs were involved; Papa v. Spurlock, 1 CA-
16 CV 88-278 ("Spurlock"), which also involved a real estate sales commission allegedly earned
17 by the Plaintiffs. Id. § XVIII. Plaintiffs allege that the Arizona Court of Appeals ruling
18 against them "likewise did not conform to the law or the evidence of the case. Instead, the
19 [Arizona Court of Appeals] wrongfully ruled that Plaintiffs had accepted a pittance ($15,000)
20 out-of-court settlement to end the case," which is contrary to the Plaintiffs $388,400.00 fee
21 allegedly earned on the deal. Id. Plaintiffs allege that the Arizona Court of Appeals "should
22 have first ruled that Plaintiffs had in fact earned the full real estate sales fee and that to
23 enforce a non-existent out-of-town settlement was unjust." Id. § XIX. Additionally,
24 Plaintiffs contend that "the [Arizona Court of Appeals] should have immediately ruled the
25 first Roberts case to be in Plaintiff's favor, which would have precluded the Spurlock case
26 from being ruined with a false Roberts Memorandum Decision." Id. § XX. In sum, with
27 respect to the Spurlock case, Plaintiffs allege:
28

> The Appeals Court did not conform to the true law or evidence of the Spurlock case, as to the earned real estate sales commission. Opposing counsel cheated and broke the law to deceive the court and to steal judgment from Plaintiffs, and the court was so advised, yet the Appeals Court failed to do its duty to reverse its false Memorandum Decision in this Spurlock case. This judicial failure by the Appeals Court obstructed justice; violated due process, and caused property (commission) loss for Plaintiffs.

Id. § XXVII.

Plaintiffs further raise error with the Arizona Court of Appeals decision and handling in Papa v. State, 1 CA-CV 02-0629 ("State"), which according to Plaintiffs "was false because it likewise did not conform to the evidence, or the law, or the facts of the case." Id. § XXVIII. According to Plaintiffs, this case derived out of "a Court Order that allowed the Arizona Corporation Commission to take over the Papa Water Utility Company on the pretext of putting the system into compliance with the Arizona Department of Environmental Quality, then return the system to Papa." Id. § XXIX. Plaintiffs contend that they "were defrauded of their property since the [Arizona Corporation Commission] did not maintain and return Plaintiff's property as the Court Order required the [Arizona Corporation Commission] to do." Id. Plaintiffs assert that the Arizona Court of Appeals committed error in affirming two prior dismissals or rulings of the Superior Court's handling of Plaintiffs' claims. Id. § XXXV.

Plaintiffs allege that they filed motions for reconsideration of the prior erroneous Arizona Court of Appeals' decisions in Roberts, Spurlock and State (Complaint, Exhibits A-C) and that the motions "[are] more than sufficient to show that the Arizona Judicial System was negligent, derelict and incompetent to provide adequate judicial service to Plaintiffs..." Id. § XXXVII. Moreover, Plaintiffs allege that "[s]ince there was 'good cause' shown for reversal to false judgment, the [Arizona Court of Appeals] and the Supreme Court [of Arizona] failed their duty to process these 'good cause' Motions for Reconsideration, which injured Plaintiffs by causing their property loss contrary to law." Id. § XXXVIII. Plaintiffs cite Lindus v. Northern Insur. Co., 103 Ariz. 160, 438 P.2d 311 (1968) in support of their argument that they were permitted to file multiple motions for reconsideration "to ... gain reversal from false judgments and the injury thereto." Id. § XLII. Moreover, Plaintiffs allege

1 that Arizona Supreme Court Advisory Opinion 92-10 also supports such motions to the
2 Arizona Court of Appeals. Id. § XLIV. As such, Plaintiffs allege that "[t]he appellate
3 court(s) and judges thereto acted outside of their normal duties, scope of employment, and
4 jurisdiction, when they refused to process required review of Plaintiffs' petitions which
5 demonstrated 'good cause' to reverse prior false judgments." Id. § XLVII. Moreover,
6 Plaintiffs contend that "[s]ince fraud/collusion resulted in 3 false judgments in Roberts,
7 Spurlock and State ... then these false judgments are not conclusive or closed. False
8 judgments are required by the 'furtherance of justice' to be reversed by law." Id. § LIV.

9 Lastly, Plaintiffs allege that the Arizona Commission on Judicial Conduct has also
10 engaged in misconduct based upon Plaintiffs' Complaint to the Commission regarding the
11 conduct of Judge John C. Gemmill "for his violation of duty for failure to process Plaintiffs'
12 'good cause' motions for reconsideration." Id. § LXI. In addition, Plaintiffs allege that Chief
13 Justice Ruth V. McGregor "completely failed her constitutional duty to correct injustice,
14 once it was brought to her attention that such injustice prevailed in the court(s) below. Id.
15 § LXX.

16 Based upon the above allegations and the violations of Plaintiffs' due process and civil
17 rights, Plaintiffs seek punitive damages against all Defendants in the amount of
18 $229,280,736.00, to be paid by the state of Arizona, plus actual damages of $19,106,728.00,
19 and attorneys' fees.

20 On January 9, 2007, the State Defendants filed the instant Motion to dismiss (Dkt.#10)
21 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure asserting that: (1) Plaintiffs'
22 claims are barred by the Eleventh Amendment; (2) Justice McGregor and Judge Gemmill
23 possess judicial immunity; (3) Plaintiffs cannot assert claims under § 1983; (4) Plaintiffs
24 cannot assert claims against non-jural entities; and (5) Plaintiffs cannot assert claims under
25 42 U.S.C. § 1981. The Plaintiffs responded on January 18, 2007 (Dkt.#11) as well as
26 submitted a sur-reply to the State Defendants' reply on February 26, 2007. (Dkt.#18). As
27 such, the motion to dismiss is ripe for the Court's consideration.

28 **II.    Jurisdiction**

1    Plaintiffs cite 28 U.S.C. § 1331, federal question jurisdiction as the basis of this
2 Court's jurisdiction to hear Plaintiffs' suit. The State Defendants, in arguing that dismissal
3 is appropriate, do not contend that this Court lacks subject matter jurisdiction to hear
4 Plaintiffs' suit due to the significance of the *Rooker-Feldman* doctrine, which, as discussed
5 below, bars federal courts from reviewing the merits of prior state court judgments.
6 However, notably, the Plaintiffs in an attempt to distinguish this case from the scope of the
7 *Rooker-Feldman* doctrine, argue in their Complaint that the doctrine does not apply to this
8 case. (Complaint, LXXIV - LXXXVII (pp. 26-30)). In light of the fact that the Plaintiffs
9 raise issue with prior state court decisions and judgments in their Complaint, this Court finds
10 that it is appropriate to address this Court's subject matter jurisdiction and the significance
11 of the *Rooker-Feldman* doctrine *sua sponte*. See Scholastic Entertainment, Inc. v. Fox
12 Entertainment, 336 F.3d 982, 985 (9th Cir. 2003) (noting that district court has the authority
13 to dismiss an action *sua sponte* for lack of jurisdiction).

14    **A.    *Rooker-Feldman* Doctrine**

15    Under what has become known as the *Rooker-Feldman* doctrine, federal district courts
16 lack jurisdiction to review the judgments and decisions of state courts. District of Columbia
17 Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust
18 Co., 263 U.S. 413, 44 S.Ct. 149 (1923). In Feldman, 460 U.S. at 486, the Supreme Court
19 stated that district courts do not have jurisdiction "over challenges to state court decisions in
20 particular cases arising out of judicial proceedings even if those challenges allege that the
21 state court's action was unconstitutional." Rather, the court added, "[r]eview of those
22 decisions may be had only in the [the Supreme] Court" pursuant to 28 U.S.C. § 1257. Id.
23 The Ninth Circuit has recently provided additional instruction in applying the *Rooker-*
24 *Feldman* doctrine. In Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003), the Ninth Circuit
25 provided this formulation: "[i]f a federal plaintiff asserts as a legal wrong an allegedly
26 erroneous decision by a state court, and seeks relief from a state court judgment based on that
27 decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." In such
28 an instance, that federal plaintiff seeks a forbidden de facto appeal. See id. at 1163. In

1 Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986), the Ninth Circuit
2 emphasized that the *Rooker-Feldman* doctrine "applies even when the challenge to the state
3 court decision[s] involves federal constitutional issues," such as challenges anchored to
4 alleged deprivations of federally protected due process and equal protection rights.

5       In the instant case, based upon a plain review of Plaintiffs' Complaint, outlined above,
6 there can be no doubt that Plaintiffs seek this Court to act as an appellate court of the state
7 court decisions and judgments rendered against them. Essentially, Plaintiffs would have this
8 Court perform a collateral review of the adverse judgments of the Arizona state courts in the
9 Roberts, Spurlock and State litigations. Plaintiffs' entire complaint appears to be based upon
10 the premise that the Superior Courts, the Arizona Court of Appeals and the Arizona Supreme
11 Court erroneously decided Plaintiffs' suits and erroneously determined Plaintiffs' appeals.
12 This Court does not have the authority to review such issues. Similarly, Plaintiffs' claims
13 against Justice McGregor and Judge Gemmill are premised on the notion that they
14 improperly decided or handled Plaintiffs' appeals and motions for reconsideration. Such
15 requests by Plaintiffs would require this Court "to conduct a direct review of the state court's
16 judgment and to scrutinize the state court's application of various rules and procedures
17 pertaining to [the] case," which this Court simply cannot do under the *Rooker-Feldman*
18 doctrine. Allah v. Superior Court, 871 F.2d 887, 891 (9th Cir. 1989).  Despite Plaintiffs
19 apparent attempt to frame the allegations involving the prior state court judgments as
20 collateral or incidental to the claims in this case, it is wholly apparent that the prior state
21 court decisions and judgments are at the center of this suit and would require this Court to
22 evaluate the merits and handling of the state court judgments and appeals. For instance, in
23 support of Plaintiffs' due process and civil rights claims, Plaintiffs repeatedly contend that
24 the judgments in the Roberts, Spurlock and State matters "did not conform to the evidence,
25 or the law, or the facts of the case." Complaint §§ XV, XVIII, XXVIII. This Court lacks the
26 authority to act as a court of collateral review regarding the Plaintiffs' argument in opposition
27 to the decisions and handling of such cases. Rather, only the United States Supreme Court
28

would have the jurisdiction to review the prior state court judgments.[1]  Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint and this matter must be dismissed.[2]

### III. Conclusion

The Court, upon *sua sponte* review, finds that it lacks subject matter jurisdiction to hear Plaintiffs' suit. Plaintiffs' action constitutes a collateral attack on prior state court decisions and judgments that this Court lacks jurisdiction to hear. Because the Court finds that dismissal is appropriate, the Court will deny as moot the remaining pending motions such as Plaintiffs' Motion for summary judgment. (Dkt.#13). To the extent Plaintiffs seek this Court's order to be in the form of a published opinion, the Court finds no reason to direct such.

**Accordingly,**

**IT IS HEREBY ORDERED** granting the State Defendants' Motion to dismiss to the extent they seek dismissal of the instant suit. (Dkt.#10). This Court lacks subject matter jurisdiction, and thus, Plaintiffs' Complaint and action are dismissed.

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Summary Judgment (Dkt.#13); Request to Expedite Judgment (Dkt.#22-2); and Motion for Entry of Default as to Defendants. (Dkt.#23).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Judgment to be in Form of Published Opinion. (Dkt.#22-1).

---

[1] In Plaintiffs' Complaint, they state that "[i]t is appropriate that this federal court repudiate, if necessary, the unjust, oppressive, and misguided Rooker-Feldman Doctrine, in the event it is itself an obstruction of justice." Complaint § LXXXV. This Court; however, is bound by the well settled precedent that establishes that collateral attacks on state court judgments, such as this one, do not properly invoke a federal district court's subject matter jurisdiction. In light of such precedent, this Court will not depart based upon Plaintiffs' request.

[2] Because the Court has determined that it lacks subject matter jurisdiction, it will not address the other arguments in support of dismissal advanced by the Defendants.

- 7 -

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

**DATED this 5th day of July, 2007.**

_____
Mary H. Murguia
United States District Judge